IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MACARIO H. ORTEGA MIRANDA,
　　　　Petitioner,

　　　　　　v.                                                   Civil No. 3:25cv769 (DJN)

PAMELA BONDI, *et al.*,
　　　　Respondents.

## MEMORANDUM OPINION
### (Granting 28 U.S.C. § 2241 Petition)

　　　　Petitioner Macario Ortega Miranda ("Petitioner" or "Mr. Ortega Miranda"), a native and

citizen of Guatemala proceeding with counsel, has submitted a three-count Amended Petition for

a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (ECF No. 10 ("Amended Petition" or

"Amend. Pet.")), challenging the lawfulness of his detention by Immigration and Customs

Enforcement ("ICE").  Petitioner submitted his Amended Petition against Respondents Pamela

Bondi, Kristi Noem, Todd M. Lyons, James A. Mullen, and Jeffrey Crawford (collectively,

"Respondents").  In his Amended Petition, Petitioner alleges that his detention without bond

eligibility, based on Respondents' characterization of his status as an "arriving alien" pursuant to

8 U.S.C. § 1225(b), violates his substantive and procedural due process rights (Count I).

(Amend. Pet. ¶¶ 31–35.)  Petitioner further alleges that Respondents' characterization of

Petitioner's status under the Immigration and Nationality Act ("INA") stands not only incorrect,

(Count II), but arbitrary and capricious pursuant to the Administrative Procedure Act ("APA")

(Count III).  (*Id.* ¶¶ 36–53.)[1]

---

[1]　　　In Count II of his Amended Petition, Petitioner argues that Respondents have incorrectly
applied the INA's statutory and regulatory language in violation of "8 U.S.C. § 1236(a)."

For the reasons set forth below, the Court will grant the Amended Petition, (ECF No. 10), as to Counts I and II.[2]  The Court will order Respondents to provide Mr. Ortega Miranda with a bond hearing under 8 U.S.C. § 1226.

## I.    BACKGROUND

### A.    Factual and Procedural Background

Mr. Ortega Miranda is a 38-year-old Guatemalan citizen who entered the United States in August 2007.  (Amend. Pet. ¶¶ 2, 23.)  On August 12, 2025, Enforcement and Removal Operations ("ERO") officers came upon Petitioner in the parking lot of a Home Depot in Washington, D.C.  (*Id.* ¶ 24.)  After inquiring about Petitioner's identity, the ERO officers arrested Petitioner, transported him to an ICE facility in Chantilly, Virginia, and served him with a Notice to Appear [3] ("NTA") in immigration court to defend against a charge under 8 U.S.C. § 1182(a)(6)(A)(i), which alleges that Petitioner is present in the United States without having been admitted or paroled.  (*Id.*; ECF No. 1-2 at 6–9.)  At the same time, immigration officers

---

(Amend. Pet. at ¶ 36.)  "8 U.S.C. § 1236(a)" does not exist.  The Court construes Count II of Plaintiff's Amended Petition, and all other references to "8 U.S.C. § 1236(a)," as referencing 8 U.S.C. § 1226(a), which provides the means of relief that Petitioner seeks under the INA.

[2]    Because the Court grants Petitioner relief on procedural due process grounds, it need not address Petitioner's arguments based on substantive due process (Count I) or the APA (Count III).  (Amend. Pet. ¶¶ 34, 36–47, 48–53.)  *Campos-Flores v. Bondi*, 2025 WL 3461551, at *6 n.18 (E.D. Va. Dec. 2, 2025) (declining to analyze a petitioner's substantive due process claim based on continued detention when it found that denial of a bond hearing violated his procedural due process rights); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 914 n.1 (E.D. Va. 2024) ("Because the Court is granting relief on due process grounds, it need not address Petitioner's APA or INA claims.")

[3]    A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'"  *Hasan v. Crawford*, 800 F. Supp. 3d 641, 648 n.3 (E.D. Va. 2025) (quoting 8 C.F.R. § 1003.13).

conducted a custody determination under 8 U.S.C. § 1226 and concluded that Petitioner should remain in ICE detention. (Amend. Pet. ¶ 25; ECF No. 1-2 at 11.)

On September 4, 2025, during a master calendar hearing in the Annandale, Virginia Immigration Court, Petitioner, through counsel, admitted to the facts alleged in the NTA and conceded his removability as charged. (Amend. Pet. ¶ 26.) Petitioner then moved for a custody redetermination hearing on September 16, 2025; the Court granted Petitioner's motion and scheduled a bond hearing for September 18, 2025. (*Id.* ¶ 27.) However, at the beginning of the September 18, 2025 bond hearing, the Immigration Judge stated "that she lacked jurisdiction to hold a bond hearing because of a recent decision of the Board of Immigration Appeals, *Matter of Hurtado,* 29 I. & N. Dec. 216 (BIA 2025)." (*Id.* ¶ 28.) Petitioner's counsel argued that "because ICE elected to put Mr. Ortega Miranda in removal proceedings and arrested him with a warrant, he is eligible for a bond hearing under 8 U.S.C. § 1226(a)." (*Id.*) The Immigration Judge nonetheless found that *Hurtado* applied and Petitioner was detained under 8 U.S.C. § 1225(b)(2)(A), which does not entitle him to a bond hearing and subjects him to mandatory detention. (*Id.*)

On September 22, 2025, Petitioner filed his initial petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this Court. (ECF No. 1.) The Court subsequently ordered Petitioner to comply with Rule 2(c)(5) of the Rules Governing Section 2254 Cases. (ECF Nos. 3, 9.) Petitioner filed an Amended Petition for Writ of Habeas Corpus, in compliance with Rule 2(c)(5) of the Rules Governing Section 2254 Cases, on October 27, 2025, seeking an order directing Respondents to (1) immediately release him from custody or, in the alternative, promptly provide a bond hearing; and (2) refrain from re-detaining him during the pendency of his removal proceedings absent evidence that he poses a flight risk or danger to the community, as presented

at a bond hearing during which Petitioner may contest such evidence. (Amend. Pet. ¶ 6.)

Respondents timely submitted their opposition to Petitioner's Amended Petition on December

23, 2025. (ECF No. 14 (" Opp.")).[4] Petitioner submitted his reply on January 2, 2026, (ECF

No. 16 ("Reply")), rendering his Amended Petition ripe for judicial review.

## II.    STANDARD OF REVIEW

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the

Supreme Court, any justice thereof, the district courts and any circuit judge within their

respective jurisdictions." 28 U.S.C. § 2241(a). "[A] federal court may grant habeas relief only

on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties

of the United States." *Torrence v. Lewis,* 60 F.4th 209, 213 (4th Cir. 2023) (cleaned up). After

receiving a petition and the respondent's response, "[t]he court shall summarily hear and

determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. A

habeas petition brought under 28 U.S.C. § 2241 is subject to the Federal Rule of Civil Procedure

12 standards for dismissal. *See, e.g., Kabando v. Blinken*, 2021 WL 3929826, at *2 (E.D. Va.

Sept. 2, 2021) (applying Rule 12(b)(6) standards to habeas petition); *Popoola v. Scales*, 2025

---

[4]      On December 2, 2025, Petitioner filed an additional Motion to Grant Petition for Writ of
Habeas Corpus, moving the court to grant habeas relief following the U.S. District Court for the
Central District of California's certification of a nationwide class of detained noncitizens who
have been denied access to a bond hearing. (ECF No. 13 (citing *Maldonado Bautista et al v.
Santacruz,* No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Nov. 25, 2025).) While Petitioner titled this
filing as "Motion to Grant Petition for Writ of Habeas Corpus," the Court construes this filing as
a notice of supplemental authority, rather than a stand-alone motion. Respondents replied to
Petitioner's Motion (ECF No. 13) on December 23, 2025 (ECF No. 15). Since the Court finds
that Petitioner's detention without a bond hearing violates his procedural due process rights, the
Court need not address his filing providing supplemental authority.

WL 3473370, at *3 (E.D. Va. Dec. 3, 2025) (applying Rule 12(b)(1) and Rule 12(b)(6) standards to § 2241 petition).

A motion made under Rule 12(b)(6) tests the sufficiency of a complaint; it does not provide the means by which a court will resolve factual contests, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court must accept the well-pleaded factual allegations in the complaint as true and views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 1 F.3d 1130, 1134 (4th Cir. 1993). However, the court need not accept legal conclusions couched as factual allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Under Federal Rule of Civil Procedure 8(a), a complaint must state facts sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must state "more than labels and conclusions" or a "formulaic recitation of the elements," though the law does not require "detailed factual allegations." *Id.* Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### III.    ANALYSIS

The Amended Petition presents a central question that has now been analyzed many times in this Court: whether Petitioner, as a noncitizen who entered the United States without inspection, stands entitled to a bond hearing under 8 U.S.C. § 1226(a), or whether he is subject to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A). The Court first reviews the relevant statutory scheme governing Petitioner's detention under 8 U.S.C. § 1226(a), and then turns to the parties' arguments.

### A.    Legal Background

Petitioner seeks a bond hearing under 8 U.S.C. § 1226, which provides immigration officials with discretion to conduct such hearings. Respondents insist that Petitioner is properly detained subject to the mandatory detention provisions of 8 U.S.C. § 1225, which do not grant detainees a bond hearing.

For decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], [are] the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde,* 792 F. Supp. 3d 211, 217 (D. Mass. 2025) (cleaned up).

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' July 8,

6

2025 memorandum. 29 I. & N. Dec. 216 (BIA 2025). "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Bethancourt Soto v. Soto*, 2025 WL 2976572, at *1 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I. & N. Dec. at 227–29).

ICE thus began to classify all noncitizens who had entered the United States without inspection as noncitizens "seeking admission," no matter how much time had passed between their entrance into the United States and their apprehension by law enforcement. Numerous federal courts across the Nation have indicated that Respondents' detention of noncitizens who entered without inspection under § 1225, rather than under § 1226, "would upend decades of practice." *Martinez*, 792 F. Supp. 3d at 217.

### B. Parties' Arguments

Petitioner maintains that § 1226 governs his detention and therefore entitles him to a bond hearing. (Amend. Pet. ¶¶ 34.) In support, he argues that the discretionary detention framework of § 1226(a) provides Petitioner a statutory right to a bond hearing and that the Fifth Amendment's Due Process Clause independently reinforces his entitlement to such relief. (*Id.* ¶¶ 31–47). Respondents counter that Petitioner is properly detained pursuant to §1225, (Opp. at 2), Petitioner's continuous detention without a bond hearing stands authorized by § 1225's mandatory detention scheme, (*id.* at 5–22), and that "since no additional process is due to him," they have not violated Petitioner's constitutional due process rights by denying him a bond hearing, (*id.* at 2, 22–29).

The parties' dispute in this matter involves the same claims as other, recent § 2241 habeas actions in the Eastern District of Virginia, including five cases decided by this

7

Court.[5]  Indeed, Respondents acknowledge that their arguments have previously been rejected by

numerous Courts in this District.  (Opp. at 13, 15, 21–22, 26.)  Mr. Ortega Miranda's Amended

Petition raises no new issues, and Respondents raise no new arguments, that would compel a

different outcome here.

For the reasons provided below, the Court concludes that 8 U.S.C. § 1226(a) and the

Fifth Amendment entitle Petitioner to a bond hearing.  Accordingly, the Court will grant the

Amended Petition.  (ECF No. 10.)

### 1.    Exhaustion

As an initial matter, the Court examines whether Petitioner must exhaust his

administrative remedies before bringing this Amended Petition.  The Court finds that he is not

required to do so.

Before properly bringing a § 2241 habeas petition in federal district court, a petitioner

typically must exhaust his or her administrative remedies.  *Timms v. Johns*, 627 F.3d 525, 530–

31 (4th Cir. 2010) (stating that "[a]s a general rule, in the absence of exceptional circumstances

where the need for the remedy afforded by the writ of habeas corpus is apparent. . . courts

require exhaustion of alternative remedies before a prisoner can seek federal habeas relief")

(internal citation and quotation marks omitted).  "[B]ecause exhaustion requirements for filing

pursuant to § 2241 are judicially imposed, this Court has discretion to waive exhaustion in

certain circumstances and proceed to the merits of petitioner's claim."  *Myers v. Williams*, 2015

WL 9304550, at *4 (N.D.W. Va. Dec. 21, 2015).  For instance, a court may waive the exhaustion

---

[5]      *Duarte Escobar v. Perry,* 2025 WL 3006742 (E.D. Va. Oct. 27, 2025); *Perez-Gomez v. Warden, Camp E. Montana Det. Facility,* 2025 WL 3141103 (E.D. Va. Nov. 10, 2025); *Contreras Perez v. Noem,* , 2025 WL 3281774 (E.D. Va. Nov. 25, 2025); *Campos-Flores v. Bondi,* 2025 WL 3461551 (E.D. Va. Dec. 2, 2025); *Hugo Romero, v. Jeff Crawford, et al.,* 2026 WL 94634 (E.D. Va. Jan. 13, 2026).

requirement when exhaustion would be futile.  Indeed, "[t]he Supreme Court has instructed that one circumstance in which district courts need not require exhaustion is when the administrative body has predetermined the issue before it." *Aguilar v. Lewis*, 50 F. Supp. 2d. 539, 542 (E.D. Va. 1999) (citing *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992)).

Here, Petitioner correctly argues that he need not exhaust his administrative remedies because to do so would be futile.  (Amend. Pet. ¶ 15) ("Mr. Ortega Miranda has no reasonable expectation that the [Board] will act contrary to the decision it issued in *Hurtado* just two weeks ago.")  The BIA, through its September 5, 2025 decision in *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025),  has "predetermined the issue before it." *Aguilar,* 50 F. Supp. 2d at 542.  As a result, any administrative appeal by Petitioner seeking a bond hearing would be futile.  Petitioner need not exhaust his administrative remedies because to do so would be an attempt in futility.[6]  Respondents' failure to address Petitioner's exhaustion argument further reinforces the soundness of this conclusion.[7]

## 2.    Whether Petitioner is Detained Under § 1225 or § 1226

The Court must next determine whether Petitioner's detention is governed by the mandatory detention provisions in 8 U.S.C. § 1225(b)(2)(A) or the discretionary detention provisions in 8 U.S.C. § 1226(a).  Respondents, reusing identical arguments they have raised in numerous habeas cases in this District, contend that Petitioner constitutes an

---

[6]    Numerous district courts around the country have come to the same conclusion regarding exhaustion of administrative remedies after the BIA decided *Hurtado.  See, e.g, Giron Reyes v. Lyons,* 2025 WL 2712427, at *3 (N.D. Iowa 2025); *Inlago Tocagon v. Moniz.,* 2025 WL 2778023, at *2 (D. Mass. 2025); *HG.V.U. v. Smith,* 2025 WL 2962610, at *3 (N.D. Ill. Oct. 20, 2025); *Duarte Escobar*, 2025 WL 3006742, at *5–*6; *Contreras Perez,* 2025 WL 3281774, at *3 n.8; *Campos-Flores,* 2025 WL 3461551, at *4 n.4.

[7]    Respondents clarify that they expressly "do not assert that 'any claim in the petition is barred by a failure to exhaust state remedies[.]'" (Opp. at 1 n. 1.)

"applicant for admission" and therefore stands subject to mandatory detention under 8

U.S.C. § 1225(b)(2). (Opp. at 5.) Petitioner contends that Respondents have instead

detained him under 8 U.S.C. § 1226(a), entitling him to a bond hearing. (Amend. Pet. ¶ 46,

50; Reply at 3–4). For the reasons stated below, as well as by the dozens of other decisions

issued by this Court on the same issue, the Court finds that § 1226(a) governs Petitioner's

detention.

The Court has already explained the intricacies of §§ 1225(b) and 1226. *See Hasan*,

800 F. Supp. 3d at 651–52 ("noncitizens detained under Section 1225(b)(2) must remain in

custody for the duration of their removal proceedings, while those detained under Section

1226(a) are entitled to a bond hearing before an IJ at any time of entry of a final removal

order.") (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025)).

In sum, § 1225(a)(1) provides that a noncitizen "present in the United States who has not

been admitted or who arrives in the United States. . . shall be deemed for purposes of this

chapter an applicant for admission." The statute defines an "applicant for admission"

under §1225(a)(1) as "[a]n alien present in the United States who has not been admitted or

who arrives in the United States[.]" Section 1225 then divides "applicants for admission"

into two categories under § 1225(b)(1) and § 1225(b)(2). Under § 1225(b)(2), which

pertains to the Amended Petition here, if an immigration officer "determines that an alien

*seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall*

be detained[.]" § 1225(b)(2)(A) (emphasis added).

By contrast, § 1226(a) sets forth the "default rule" for detaining noncitizens "already

present in the United States." *Quispe-Ardiles v. Noem,* 2025 WL 2783800, at *5 (E.D. Va.

Sept. 30, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). According to

10

Section 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Unlike §1225(b)(2)(A), noncitizens who fall under § 1226(a) are not subject to mandatory detention. Instead, pending a removal decision, the Attorney General may continue to detain an arrested noncitizen, release the noncitizen on bond or release him or her on conditional parole, unless that noncitizen falls within certain exceptions involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(a)(1-2), (c).

Respondents argue that Petitioner is "seeking admission" pursuant to § 1225(b)(2)(A), thereby making his mandatory detention lawful. (Opp. at 8.) In Respondents' telling, "[a]n alien is actively seeking admission into the U.S. simply by being in the U.S. without being admitted." (*Id.* (citing *Jennings*, 583 U.S. at 288 (holding that noncitizens detained under § 1225(b)(2)(A) "shall be detained for a removal proceeding if an immigration officer determines that they are not clearly and beyond a doubt entitled to be admitted into the country")) (internal citations omitted). Respondents note that Petitioner "entered the U.S. without inspection" and thus was never "lawfully admitted" into the U.S. (*Id.* at 11–12 (citing *Jimenez-Rodriguez*, 996 F.3d 190, 194 n.2 (4th Cir. 2021)).) Although Petitioner does not actively seek admission, Respondents argue that "[n]o separate affirmative act is necessary" because "one may 'seek' something without 'applying' for it[.]" (*Id.* at 9 (citing *Matter of Lemus-Lora,* 25 I. & N. Dec. 734, 743 (BIA 2012)) ("[M]any people who are not actually requesting permission to enter the U.S. in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws").) The Court disagrees for four reasons: 1) the plain text of the statute uses active language; 2) Respondents' interpretation would obviate other parts of the INA; 3) Respondents' novel interpretation of

11

§ 1225 contravenes decades of practice and caselaw; and 4) Respondents' treatment of Petitioner here clearly demonstrates that he stands detained under § 1226, not § 1225.

### i.    § 1225's Active Language

First, the plain text of § 1225(b)(2)(A) requires that an alien must *actively* seek admission. As recently explained by this Court, "[s]ection 1225(b)(2) uses active language. An applicant for admission must be 'seeking' admission for mandatory detention to apply. The statute's use of the present participle 'necessarily implies some sort of present-tense action.'" *Duarte Escobar v. Perry*, 2025 WL 3006742, at *9 (E.D. Va. Oct. 27, 2025) (quoting *Martinez*, 792 F.Supp.3d at 218)); *see also Quispe v. Crawford*, 2025 WL 2783799, at *5 (E.D. Va. Sept. 29, 2025) ("[Section 1225(b)(2)(A)] brings within its scope only those individuals *actively* seeking admission into the country, and not those who have already entered the country[.]") (emphasis added).

Respondents' reliance on the Fourth Circuit's decision in *Jimenez-Rodriguez v. Garland*, 996 F.3d 190 (4th Cir. 2021) to rebut this holding stands misplaced. In *Jimenez-Rodriguez*, the Court observed that the petitioner there "was never lawfully admitted" to the United States and therefore qualified as someone "seeking admission." *Jimenez-Rodriguez*, 996 F.3d at 194 n.2. However, there, the petitioner affirmatively sought admission by taking concrete steps to regularize his status, including applying for a U-visa and a waiver of inadmissibility. *Id.* at 191–93. In contrast, Petitioner here has taken no comparable action to actively seek admission.

### ii.    Respondents' Interpretation Would Render Provisions of the INA Superfluous

"One of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void

or insignificant.'" *Hasan*, 800 F. Supp. 3d at 656 (quoting *Corley v. United States*, 556 U.S.

303, 314 (2009)). Respondents' position that an undocumented immigrant's presence in the

United States must mean that the noncitizen actively seeks admission would render other

statutory provisions of the INA superfluous, violating this principle.

For instance, another provision of the INA, 8 U.S.C. § 1226(c)(1)(A), requires the

Attorney General to "take into custody any alien" who is inadmissible "by reason of having

committed any offense covered in [8 U.S.C. § 1182(a)(2)]." Under Respondents' reading,

such an individual would already be in the United States without having been admitted,

triggering mandatory detention under § 1225 and rendering 8 U.S.C. § 1226(c)(1)(A)'s

directive to place that individual in mandatory detention a superfluous command. In other

words, "mandatory detention under § 1226(c) would be unnecessary if all persons who have

not been admitted into the United States were already subject to § 1225(b)'s mandatory

detention provisions." *Hasan*, 800 F. Supp. 3d at 656; *Quispe*, 2025 WL 2783799, at *5

(same); *Quispe-Ardiles*, 2025 WL 2783800, at *6 (rejecting respondents' identical

arguments as rendering § 1226(c)(1)(E) superfluous).

Respondents' arguments otherwise do not persuade the Court.

First, Respondents assert that § 1226(c)(1) independently mandates detention of

"criminal aliens" and is "not limited to any subset." (Opp. at 14 (emphasis in original).)

Even accepting Respondents' description of § 1226(c)'s breadth, Respondents' explanation

does not resolve the logical defect in their position. If § 1225(b)(2) applies whenever an

alien is "simply in the United States without having been admitted," it would necessarily

13

apply to the very "criminal aliens" covered by § 1226(c), thereby stripping § 1226(c) of any independent operative effect. *See Duarte Escobar*, 2025 WL 3006742, at *10.

Respondents also attempt to save their position by relying on the interpretative canon that a general provision should yield to a more specific one. (Opp. at 15.) Respondents contend that the mandatory provisions of § 1225(b)(2) must control to detain all unadmitted noncitizens, over the more general provisions of the INA, such as § 1226. (*Id.*) In other words, where a noncitizen could stand subject to both provisions but §1225 contains more mandatory language, § 1226's general and discretionary provisions should not be applied when doing so would undermine limitations created by" § 1225. (*Id.* (citing *In re Wright*, 826 F.3d 774, 779 (4th Cir. 2016)).) However, Respondents still fail to explain how this canon could save their position in light of the Court's holding that their expansive interpretation of "arriving alien" would obviate another accompanying statutory provision. Ultimately, extending § 1225(b)(2) to Petitioner based solely on his presence in the United States would not merely limit another provision of the INA, § 1226(c), but would instead eliminate its independent operation altogether. This Court refuses to apply a canon of statutory construction that would render another provision of the INA entirely defunct, and thus rejects Respondents' interpretation of § 1225(b)(2).

### iii.    *Respondents' Arguments Contravene Longstanding Precedent*

Third, Respondents' theory is contradicted by fundamental immigration law precedent and decades of DHS's own practices.

In arguing that § 1226 does not apply to any noncitizen who has entered and remained in the United States illegally, Respondent misreads the Supreme Court's most recent interpretation of the statutory distinction between immigrants detained under §§ 1225

14

and 1226. In *Jennings v. Rodriguez*, the Supreme Court clearly explained that § 1225(b) governs noncitizens "seeking admission into the country," while § 1226(a) applies to noncitizens "already in the country" who are placed in removal proceedings. 583 U.S. at 289. The Supreme Court further described § 1226 as the "default rule" governing the arrest and detention of noncitizens already present in the United States, authorizing detention "pending the outcome of their removal proceedings." 583 U.S. at 303 (quoting 8 U.S.C. § 1226(a)). Thus, *Jennings* aligns with this Court's view that § 1226's discretionary detention provisions apply "even before an Immigration Judge has made a finding regarding the propriety of an alien's detention under any statute." *Duarte Escobar*, 2025 WL 3006742, at *11. *Jennings'* holding thus reinforces the fact that noncitizens who have never actively sought admission are subject to § 1226, not § 1225. Importantly, although it described § 1226 as applying to "certain aliens," (Opp. at 16), *Jennings* never expressly cabined the reach of § 1226, maintaining the distinction between noncitizens subject to § 1226 and § 1225. *Duarte Escobar*, 2025 WL 3006742, at *12.

This distinction accords with the Supreme Court's longstanding legal precedents. As the Supreme Court has observed, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality," with the latter category afforded rights and protections not extended to individuals "on the threshold of initial entry." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *accord Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). Thus, regardless

15

of Respondents' arguments on the import of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, (Opp. at 17–21), the Supreme Court has maintained its clear doctrine that noncitizens who have entered and stayed in the United States stand entitled to "rights and protections" not extended to individuals actively seeking admission at the borders of our country.

Further, decades of DHS's own practice contravene Respondents' interpretation of § 1225. Until recently, Immigration Judges routinely "conducted bond hearings for aliens who entered the United States without inspection." *Yajure Hurtado*, 29 I. & N. Dec. at 225 n.6. That longstanding practice reflected DHS's historic understanding that § 1226(a), not § 1225(b)(2), governs the detention of noncitizens who cross the border between ports of entry and are apprehended after entering the United States. As this Court has recognized, DHS's "longstanding practice of applying § 1226(a) to persons apprehended shortly after crossing the border—like any other interpretive aid—can inform a court's determination of what the law is." *Hasan*, 2025 WL 2682255, at *9 (quoting *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up)). Indeed, DHS itself has acknowledged that its historical position was that "§ 1226(a) applie[d] to those who have crossed the border between ports of entry and are shortly thereafter apprehended." *Id.* (quoting Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)); *see also Lopez Benitez v. Francis*, No. 25cv5937 (DEH), 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025) (observing that DHS's "novel position would expand § 1225(b)

16

far beyond how it has been enforced historically" and simultaneously narrow "§ 1226(a) such that it would have extremely limited (if any) application.").

The BIA's recent decision in *Hurtado* upends decades of DHS's own practices, departs from a settled statutory distinction and conflicts with the Supreme Court's framework distinguishing mandatory detention of individuals seeking admission from discretionary detention for those already present in the United States. This Court therefore joins the growing number of district courts rejecting Respondents' expansive application of § 1225(b)(2). *See Hyppolite v. Noem*, WL 2829511, at 12 (E.D.N.Y. Oct. 6, 2025) (observing that, within months, "well over a dozen federal courts" rejected Respondents' "novel and illogical interpretation of the INA.").

### iv.    *Respondents' Treatment of Petitioner Contradicts Their Position*

What's more, immigration officers' treatment of Petitioner in the instant case supports the conclusion that he is detained under §1226(a). When immigration officers arrested Petitioner on August 12, 2025, they served him with an NTA to defend against the charge that he was present in the United States without being admitted or paroled. (ECF No. 1-2 at 6.) Respondents charged Petitioner as present in the United States without having been admitted or paroled, declining to charge him as an "arriving alien." (*Id.*; Reply at 2.) Further, and most obviously, Respondents' own custody documentation confirms that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). As Petitioner correctly observes, on August 12, 2025, immigration officers served Petitioner with a Notice of Custody Determination stating that he was being detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." (Amend. Pet. ¶ 25; ECF No. 1-2 at 11.) Section 236 of the INA is codified at

17

8 U.S.C. § 1226, and its implementing regulations appear at 8 C.F.R. § 236, meaning neither

provision governs detention under 8 U.S.C. § 1225(b)(2)(A).  Accordingly, Respondents'

express invocation of 8 U.S.C. § 1226 and its corresponding regulations demonstrate that

Petitioner's detention initially began within the statutory and regulatory framework of

§ 1226(a), which authorizes discretionary detention and affords eligibility for a bond hearing

before an Immigration Judge.  *See Hasan*, 800 F. Supp. 3d at 654–55 (finding that in a

nearly identical situation, a petitioner's initial detention, release, and rearrest "were done

explicitly pursuant to § 1226(a)".)

For all of the above reasons, the Court finds that Petitioner's detention is governed

by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures.

In so finding, it joins numerous federal district courts around the country,[8] including dozens

---

[8]      *Leal-Hernandez v. Noem*, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Hasan*, 800 F. Supp. 3d 641; *Martinez*, 792 F. Supp. 3d 211 (D. Mass 2025); *Gomes v. Hyde*, 2025 WL 1869299 (D. Mass. July 7, 2025); *Reyes v. Lyons*, No. C25-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Mosqueda et al. v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025); *Jimenez v. FCI Berlin, Warden*, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Doe v. Moniz*, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Fernandez v. Lyons*, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Perez v. Berg*, 2025 WL 2531566 (D. Neb. Sept 3, 2025); *Hernandez Nieves v. Kaiser*, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Vasquez Garcia et al. v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Carmona-Lorenzo v. Trump*, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Lopez-Campos v. Raycroft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *J.O.E. v. Bondi*, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Romero v. Hyde*, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *Samb v. Joyce*, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Orellana Juarez v. Moniz*, 2025 WL 1698600 (D. Mass. June 11, 2025); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

in the Eastern District of Virginia.[9]  In fact, no Court in this District has held otherwise.

This Court will not be the exception.

### 3.    Petitioner's Due Process Claim

In Count I of Petitioner's Amended Petition, he claims that his continued detention

without a bond hearing violates his right to procedural due process.[10]  (Amend. Pet. ¶¶ 31–35.)

The Court agrees for the following reasons.

### i.    *The Fifth Amendment's Due Process Clause Applies to Petitioner*

As an initial matter, Respondents argue that Petitioner's due process rights stand

sufficiently protected by the INA.  (Opp. at 22–24.)  In Respondents' view, "the due process

rights for . . . applicants for admission are only what the INA prescribes," and thus

§ 1225(b)(2)'s mandatory detention provisions supply the requisite due process to protect

---

[9]      *See, e.g., Hasan,* 800 F. Supp. 3d. at 656; *Quispe,* 2025 WL 2783799; *Quispe-Ardiles,* 2025 WL 2783800; *Vargas Nunez v. Lyons,* l:25-cv-1574 (LMB), ECF No. 10 (E.D. Va. Oct. 1, 2025); *Diaz Gonzalez v. Lyons,* l:25-cv-1583 (LMB), ECF No. 8 (E.D. Va. Oct. 1, 2025); *Gomez Alonzo v. Simons,* 1:25-cvl587 (LMB), ECF No. 16 (E.D. Va. Oct. 1, 2025); *Perez Bibiano v. Lyons,* l:25-cv-1590 (LMB), ECF No. 8 (E.D. Va. Oct. 2, 2025); *Ortiz Ventura v. Noem,* 1:25-cv-1429 (MSN), ECF No. 16 (E.D. Va. Oct. 2, 2025); *Lopez-Sanabria v. Bondi,* 1:25-cv-1511 (MSN), ECF No. 9 (E.D. Va. Oct. 3, 2025); *Singh v. Bondi,* No. 1:25-cv-l 525 (MSN), ECF No. 8 (E.D. Va. Oct. 7, 2025); *Guerra Leon v. Noem,* 1:25-cv-1634 (LMB), ECF No. 12 (E.D. Va. Oct. 8, 2025); *Maldonado Merlos v. Noem,* l:25-cv-1645 (LMB), ECF No. 11 (E.D. Va. Oct. 9, 2025); *Alfaro v. Lyons,* l:25-cvl569 (AJT), ECF No. 11 (E.D. Va. Oct. 11, 2025); *Singh* v. *Lyons,* 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); *Teyim v. Perry,* 2025 WL 2950183 (E.D. Va. Oct. 15, 2025); *Hernandez* v. *Crawford,* 2025 WL 2940702 (AJT) (E.D. Va. Oct. 16, 2025); *Pineda v. Simon,* 2025 WL 2980729 (E.D. Va. Oct. 21, 2025); *Lapop v. Noem,* 2025 WL 2997507 (E.D. Va. Oct. 24, 2025); *Ramirez Gomez v. Trump,* No. 1:25-cv-1443 (MSN), ECF No. 12 (E.D. Va. Oct. 27, 2025); *Duarte Escobar,* 2025 WL 3006742; *Boquin Oliva v. Noem,* No. 1:25-cv-1592 (RDA), ECF No. 12 (E.D. Va. Oct. 29, 2025); *Aguilar Lares v. Bondi,* No. 1:25-cv-1562 (LMB), ECF No. 18 (E.D. Va. Oct. 29, 2025); *Esquina Flores v. Crawford,* No. 1:25-cv-1564 (PTG), ECF No. 13 (E.D. Va. Nov. 11, 2025); *Palacios Zepeda v. Crawford,* No. 1:25-cv-1561 (PTG), ECF No. 22 (E.D. Va. Nov. 21, 2025).

[10]      Petitioner also argues that his continued detention without a bond hearing violates his substantive due process rights.  (Amend. Pet. ¶¶ 33–34.)  Because the Court finds that his detention violates his procedural due process rights, the Court need not reach that claim.

Petitioner's rights as a noncitizen who has not yet been admitted into the country. (*Id.* at 22.)

First, even assuming that Petitioner's due process rights could be derived exclusively from statute (they cannot), Respondents' analysis rests on their faulty conclusion that § 1225 constitutes the appropriate regulation in this matter. As the Court held above, the governing INA provision in Respondents' due process analysis would be § 1226, not § 1225, because § 1226 governs Petitioner's detention. *See supra,* Section B.2. All of Respondents' statutory due process arguments rest on § 1225, (*Id.* at 22–24), and therefore must fail.

In any event, Petitioner stands entitled to the due process protections of the Fifth Amendment, not the INA. To assert otherwise, Respondents rely on cases involving noncitizens stopped at the border, not individuals like Petitioner who are already present in the United States at the time of their apprehension. (*Id.*) Where, as here, a noncitizen is detained under § 1226 after entering the United States, the law stands clear: the Fifth Amendment governs the Court's due process analysis. *Hasan*, 800 F. Supp. 3d at 661; *Quispe*, 2025 WL 2783799, at \*8–9; *Quispe-Ardiles*, 2025 WL 2783800, at \*9–10. Accordingly, the Court evaluates Petitioner's due process claim under the Fifth Amendment's Due Process Clause.

### ii.    *Petitioner's Procedural Due Process Has Been Violated*

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the familiar three-part test articulated in *Mathews v. Eldridge*." *Hasan*, 800 F. Supp. 3d. at 659 (citing *Mathews v. Eldridge,* 424 U.S. 319 (1976)). *Mathews* requires courts to weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through

20

the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards"; and (3) "the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would

entail." 424 U.S. at 335. The Court finds that all three factors weigh decisively in Petitioner's

favor.

First, Petitioner's private interest in remaining free from physical detention weighs in his

favor. "Freedom from . . . detention . . . lies at the heart of the liberty that [the Due Process]

Clause protects.'" *Zadvydas*, 533 U.S. at 690. Respondents recognize as much. (Opp. at 26–

27.) Respondents nonetheless argue that this liberty interest should be given less weight when a

noncitizen has not been admitted to the United States and remains in removal proceedings, and

"when release into the United States would be an assistance to an ongoing violation of United

States law." (*Id.* at 27–28.)

However, this argument misapprehends the relief that Petitioner seeks. Release on bond

"does not preclude the government from moving forward with its removal proceedings at the

appropriate time." *Quispe*, 2025 WL 2783799, at *8. Respondents thus fail to show that

Petitioner's immigration status diminishes his liberty interest so as to foreclose any entitlement

to a bond hearing. *See Hasan*, 800 F. Supp. 3d. at 659–60 (finding that automatic stay of

immigration bond orders violated petitioner's due process rights under the first

*Mathews* factor); *Quispe*, 2025 WL 2783799, at *8 (same); *Quispe-Ardiles*, 2025 WL 2783800,

at *9 (same). Accordingly, the first *Mathews* factor heavily supports Petitioner's claim of a

procedural due process violation.

Second, the Court finds a significant risk that the lack of a bond hearing will further an

erroneous deprivation of Petitioner's due process rights. Respondents argue that Petitioner has

received sufficient process because his ability to seek parole exceeds the release opportunities available to individuals detained under § 1226(c).  (Opp. at 28.)  According to Respondents, "individuals detained under § 1225(b)(2)(A) are able to seek parole for reasons beyond those available to other aliens detained pursuant to 8 U.S.C. § 1226(c), who could be released only for narrow, witness-protection purposes.  Petitioner, by contrast, may be paroled for any 'urgent humanitarian reasons or significant public benefit.'"  (*Id.* (citing § 1182(d)(5)(A)).)  The Court finds this contention to be incorrect.  Petitioner has not received even the minimum process to which he is entitled under the relevant statutory provision, § 1226(a).  Because the Court has established that § 1226 governs Petitioner's detention, he is entitled to a bond hearing, which he has not yet received.  Accordingly, "the second *Mathews* factor weighs heavily in Petitioner's favor, as he is presently and erroneously detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing."  *Bethancourt Soto*, 2025 WL 2976572, at *8 (emphasis omitted).

Finally, Respondents have failed to make a sufficient showing that they retain a compelling government interest in detaining Petitioner without holding a bond hearing. Respondents contend that "the government's interests in mandatory detention pursuant to § 1225(b) are legitimate and significant." (Opp. at 28.)  The Court does not disagree that "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." (*Id.* (citing *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022)).)  But Respondents fail to explain why those interests would not be adequately protected through an individualized bond determination by an immigration judge under § 1226(a), or "their ability to have that release decision reviewed under the existing

regulations." *Quispe*, 2025 WL 2783799, at *9. Indeed, a bond hearing still permits denial of release where appropriate.

Respondents' related assertion that "there is always a public interest in prompt execution of removal orders" is likewise unavailing. (Opp. at 29 (quotation omitted).) As discussed above, release on bond pursuant to an immigration judge's determination does not prevent the government from proceeding with removal at the appropriate time. *Quispe*, 2025 WL 2783799, at *8; *see also Quispe-Ardiles*, 2025 WL 2783800, at *10. Accordingly, the third *Mathews* factor weighs in Petitioner's favor.

Because all three *Mathews* factors weigh in Mr. Ortega Miranda's favor, the Court must find that Petitioner's Fifth Amendment due process rights have been violated and that he is therefore entitled to a bond hearing.

## IV.    CONCLUSION

Respondents' position would require the Court to set aside the statute's plain language, controlling Supreme Court authority, the consistent reasoning of numerous courts within this District and nationwide, and their own longstanding practice. This Court joins countless others in declining to do so.

Because Petitioner has resided in the United States nearly twenty years, and because § 1226(a) governs detention of noncitizens "already present in the United States" under *Jennings v. Rodriguez*, 583 U.S. 202 (2018), the Court finds Petitioner's detention stands governed by § 1226(a). Under this provision, Petitioner clearly deserves a bond hearing before an Immigration Judge at which the government bears the burden of establishing, by clear and convincing evidence, that he poses a danger to the community, or by a preponderance of the

evidence, that he presents a flight risk.  8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1).  Absent this

showing, Petitioner's continued detention would be unlawful.

 For the above reasons, the Court will grant Petitioner's Amended Petition, (ECF No. 10),

as to Counts I and II, and will order Respondents to provide him with a bond hearing before an

Immigration Judge pursuant to 8 U.S.C. § 1226(a).

 An appropriate Order shall issue.

 Let the Clerk file a copy of this Memorandum Opinion electronically and notify all

counsel of record.

        _____/s/_____

        David J. Novak
        United States District Judge

Richmond, Virginia
Date: February 3, 2026